OPINION *Page 2 
{¶ 1} These four appeals are consolidated for purposes of opinion. In Case No. 2007AP030020, Appellant Juanita Patterson ("Mother") appeals the February 22, 2007 Adjudicatory and Dispositional Judgment Entries entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which adjudicated Skylar Bowe, her grandson, to be a dependent child and placed him in the temporary custody of a relative under the protective supervision of Appellee Tuscarawas County Job and Family Services ("the Department"). In Case No. 2007AP030021, Mother appeals the same with respect to the trial court's adjudication of her minor children as dependent and neglected, and the placement of the children in the temporary custody of their father, Appellant Ollie Patterson ("Father") under the protected supervision of the Department. In Case No. 2007AP030022 and Case No. 2007AP030023, Father appeals the same.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 26, 2006, the Department filed a Complaint in the Tuscarawas County Court of Common Pleas, Juvenile Division, alleging Amanda Patterson (DOB 11/14/89) and Brandon Patterson (DOB 9/29/98) were neglected and dependent children. The Complaint alleged Mother has a drug abuse problem which placed the health, safety, and welfare of the children at substantial risk and which constituted neglect. As a result of drug trafficking charges, Mother had completed an in-patient residential drug program at the Stark Regional Community Correction Center. Less than one week prior to the filing of the Complaint, Mother admitted recent crack cocaine usage. The Department believed she was again dealing drugs from her residence. The Complaint alleged Father neglected and/or refused to protect the minor *Page 3 
children from residing in the environment created by Mother. Father also denied and minimized Mother's drug problem. Additionally, Mother and Father neglected and/or refused to assure Amanda receive a necessary and appropriate education by allowing Amanda to miss an excessive number of days during the current school year. On September 1, 2006, the Department filed a second complaint, alleging Skylar Bowe (DOB 7/2/06), Amanda's son and Mother's grandson, was a dependent child. The Department based the Complaint upon the fact his mother (Amanda) could not provide the child with adequate and necessary parental care and support as a result of Amanda's being unable to reside in the home of her parents due to concerns about illegal drug activity. Amanda, Brandon, and Skylar were placed in the temporary custody of Dixie Dyer, Amanda and Brandon's aunt, under the protective supervision of the Department.
 {¶ 3} Following an adjudicatory hearing conducted on November 14, and 20, 2006, the trial court found Amanda and Brandon Patterson to be neglected and dependent children, and Skylar to be a dependent child.
 {¶ 4} Amanda Patterson testified, at the time the case commenced, she and Skylar were living with Broc Bowe, Skylar's father, and his parents. She stated she had been living at the Bowe residence for approximately one month. Amanda explained she moved to Broc's parents' house because her two older brothers had a lot of people coming in and out of her parents' residence. Amanda stated she did not live at the Bowe residence while she was pregnant, but did stay there occasionally. Mother and Father gave Amanda permission to reside with the Bowes as well as permission to stay *Page 4 
there while she was pregnant. Amanda acknowledged she slept in the same bed with Broc and his parents were aware of this fact.
 {¶ 5} With respect to school, Amanda stated she had problems with attendance at the beginning of the school year. Amanda testified she had conversations with school employees, but those individuals misunderstood or misinterpreted what she said about Mother. Amanda denied telling anyone Mother did drugs, but had only expressed concerns about Mother's doing drugs. Amanda noted she never actually knew if, in fact, Mother used drugs, but she had her suspicions because Mother's attitude would change. Amanda testified she never observed Mother using drugs and had never seen drugs in the house. Amanda acknowledged Broc had used drugs. On cross-examination, Amanda again reiterated she never told anyone at the school she had ever seen Mother doing drugs. Amanda acknowledged Broc had recently tested positive for cocaine and marijuana. Amanda explained she knew Broc had done drugs in the past, but believed he had stopped using before Skylar was born. Amanda stated Skylar is her second child, and she had given birth to a son at age fifteen, but that child passed away sometime in 2005.
 {¶ 6} Brandie Fox, a licensed social worker with the Tuscarawas County Educational Service Center, testified regarding Amanda's attendance at school during the 2006-2007 school year. Between August 24, 2006, and September 21, 2006, Amanda missed ten days of school and was tardy on three days. Most of Amanda's absences were unauthorized although one or two were excused for doctor's appointments for Skylar. Fox sent a warning letter to Mother and Father on August 29, *Page 5 
2006, as Amanda had missed four of the first five days of school; Fox sent another letter after Amanda missed a total of five days of school. After Amanda missed another five days, Fox sent a third letter. Mother and Father met with the school guidance counselor, and the school attendance officer made a home visit, to discuss Amanda's attendance issues. Fox noted Amanda has had a history of attendance issues. With respect to Brandon's school attendance, Fox stated, while the boy was attending Claymont Schools, he had missed only one day. However, during his kindergarten year, 2004-2005, Brandon was absent thirteen days and tardy seven days; and, during his first grade year, 2005-2006, he was absent seventeen and one-half days and was tardy three times. Fox conceded some of the absences were the result of Brandon's having pneumonia.
 {¶ 7} In September, 2006, Amanda asked one of the attendance officers to contact Fox so she (Amanda) could talk with her. Fox, Jaime Gunder and Erica Mathias, both with the Department, spoke with Amanda at the high school. During these conversations, Amanda told Fox Mother used crack cocaine and Amanda had witnessed such. Amanda told Fox she moved out of her parents' home because she was sick and tired of Mother using drugs, and she did not want to be in that environment, or for Skylar to be in such an environment. Amanda indicated her uncle would come to the house and smoke crack cocaine while Skylar was in the other room. Fox expressed concerns about returning Amanda, Brandon, and Skylar to Mother and Father's home because of the attendance and drug related issues. *Page 6 
 {¶ 8} Dixie Dyer, Amanda and Brandon's maternal aunt, testified Amanda, Brandon, and Skylar were placed with her prior to the formal filing of the Complaint. When the children first came to Dyer's home, the aunt had concerns about Amanda's parenting ability. Dyer noted Amanda did not take care of the baby. The girl spent a great deal of time on the telephone with her boyfriend, and when not on the phone, she would be on the computer. Amanda did not like to change dirty diapers, and Dyer would have to tell Amanda to feed the baby. Dyer explained Amanda did not ask her to care for the baby, but she (Dyer) felt if she did not take care of Skylar, Amanda would not do so. Dyer observed Amanda's My Space cite on the Internet, noting it contained sexually explicit and vulgar material. When Skylar first came into her care, Dyer noted she thought he might have a neurological problem. Doctors later determined Skylar slept excessively because he had no stimulation. Dyer acknowledged Mother abused drugs and had been in drug rehab. Dyer stated she thinks Father is a great guy and a good dad.
 {¶ 9} Lara DiDonato, a Help Me Grow service coordinator with Personal and Family Counseling Services, testified she met the family shortly after Amanda's late son, Kaden, was born. DiDonato became involved with the family due to Kaden's medical needs. DiDonato stated she had visited the residence on at least a dozen occasions, and found the home appropriate. Although she had only visited Amanda and Skylar on two occasions, DiDonato noted both appeared to be clean, happy, and well cared for.
 {¶ 10} Joyce Pollock, a Help Me Grow newborn nurse with Personal and Family Counseling, testified she worked with Amanda when her first child was born, initially *Page 7 
conducting a newborn visit and then a follow-up visit. After Skylar was born, Pollock conducted a newborn assessment visit and a follow-up visit. Pollock found Amanda to be receptive to the information. The nurse also provided Amanda with the information about caring for a premature child such as Skylar. Pollock found Mother and Father's home to be adequately furnished and a safe environment. Pollock explained her agency most likely had received a referral from the hospital because Amanda was such a young mother and Skylar was a premature baby.
 {¶ 11} Father stated he and Mother separated the day the children were removed. Father explained the couple separated because the Department informed him Mother could not be in the home if the children were there. Father is employed as an iron worker with R.G. Smith in Canton, Ohio. He leaves for work at 6:00 or 6:30a.m., and returns home around 3:30 or 4:00p.m. Father testified, during his twenty-three year marriage to Mother, Mother had never been in the home when she was under the influence of alcohol or drugs, and Mother had not abused alcohol or drugs in the last ten years. Father acknowledged Mother used illegal drugs and had been convicted of trafficking, but testified he had never seen her use them. Father added, prior to the children being removed from the home, Sgt. Davis of the Tuscarawas County Sheriff's Department searched the home, but did not find any illegal drugs.
 {¶ 12} While Amanda was living with the Bowes, Father had daily contact with her, either in person or by phone. Father stated when he asked, Amanda told him she was attending school. Father did not believe Amanda and Broc were sleeping together at the Bowe residence. When asked if he had ever commented Broc should pay for Amanda's birth control, father responded he did not, but had told her she did not need *Page 8 
birth control because she was not supposed to be having sex. With respect to Amanda's school attendance, Father stated he, Mother, Amanda, and Amanda's principal met to discuss the girl's truancy, and he informed Amanda she had to graduate from high school. Father agreed to let Amanda stay with Broc at his parents' residence, but required her to continue to go to school. When asked by the trial court why Amanda continued to engage in conduct of which he did not approve, Father replied he guessed he gave her too much string. On cross-examination, Father acknowledged, despite the fact he knew Amanda had an attendance problem, he never called the school to verify whether she was attending. Father testified he never made specific efforts to address Mother's drug problem. Father added he first learned of Mother's relapse with drugs after she tested positive during the pendency of the instant action.
 {¶ 13} The trial court conducted a dispositional hearing on December 12, 2006. At the hearing, Gabrielle Weingarth, an ongoing case manager with the Department, testified the Department initially became involved with the family after receiving a telephone call from Claymont City Schools, requesting the Department speak with Amanda about her allegations of drug use by Mother, her truancy, and drug use by Broc Bowe. Weingarth stated a case plan had been prepared for Mother and Father as well as one for Amanda and Broc. The case worker explained Mother was required to complete a drug and alcohol assessment, complete a psychological assessment, attend parenting classes, and submit to random drug and alcohol screens. The only requirement of Father was to attend parenting classes. With respect to Amanda, her *Page 9 
case plan required her to attend school everyday, attend parenting classes, continue to work with Help Me Grow, and to abide by any rules of any caregivers.
 {¶ 14} Weingarth believed it was in the children's best interest to remain in their current placement with their aunt, Dixie Dyer, and expressed concerns about placing the children with Father because Father needed to show the Department he had a better understanding of the problems which lead to the removal of the children. Weingarth explained Father minimized what had happened. When asked by the trial court why she did not feel Mother was an appropriate custodian for the children, Weingarth stated Mother has a long history of drug related problems. She added the children previously were removed from her care by the Stark County Department of Job and Family Services due to her incarceration on drug trafficking charges. Weingarth added Mother continued her drug related activities after her release from prison and the children told various workers in the Department they had witnessed Mother using drugs in the home.
 {¶ 15} Regarding Mother's progress on her case plan, Weingarth stated Mother had completed the drug and alcohol assessment, but had failed to start the recommended services. Mother had completed her psychological assessment, and was attending AA meetings. With regard to Father, Weingarth stated her biggest concern was his minimalization of the problems in the home, such as Amanda's failure to attend school and his failure to learn whether his daughter was sleeping with her boyfriend while in his home. Essentially, Father had no knowledge of what was going on in the home at the time. She added Father told her he did not feel he needed parenting classes as he had been a parent for over twenty years. *Page 10 
 {¶ 16} Father testified he does not believe he has minimized Mother's drug use, and has separated from Mother on the occasions when she is using illegal drugs. Father stated he is helping Mother pay for an apartment because Jamie Grunder of the Department told him Mother needed to move out of the home if he wanted the children back. Father detailed his plans for having someone in the home to get Amanda and Brandon on and off the bus, and remain with them until he arrived home from work. Father explained Skylar would be in daycare while Amanda was in school, and he had been helping with the daycare expense until Broc took over the responsibility for that expense. Father expressed his belief it was important for Amanda to continue to go to school and not to sleep with boys. Father noted he has tried to get those messages across to her in the past and intends to continue to do so, only in a stronger manner. Father stated he would keep closer supervision on Amanda and Broc to ensure the two did not engage in sex. Although married to Mother for twenty-three years, Father did not know Mother was using drugs until she had been arrested approximately three years prior, and noted, at that time, Mother was not living at the home.
 {¶ 17} Dixie Dyer testified Brandon is currently experiencing problems such as urinating in his pants at school and during the night. Dyer noticed Brandon has become more introverted and has stopped interacting with others. Dyer expressed her belief Brandon needs to be at his home with Mother and Father, as well as her belief Amanda also needs to be with her parents. Dyer adamantly stated Mother loves her children, but acknowledged the court should order Mother to follow through with the drug plan and Mother would need to follow the order. Dyer added, if the children were returned to *Page 11 
Mother and Father, and she found Mother to be using drugs, she (Dyer) would personally remove the children from the home.
 {¶ 18} Susan Sattler, a teacher in the GRADS program at the Buckeye Career Center, testified she works with pregnant teens and teen parents. Sattler stated Amanda enrolled in her program in September, 2006. Sattler and her students meet twice a week during which time she provides them with instruction on pregnancy and parenting. In addition, the GRADS program provides counseling and referrals. The program teaches the students all aspects of parenting such as development, nutrition, and discipline. Sattler stated Amanda is doing well in her class, asking questions and listening to the information provided. Amanda gives Sattler detailed answers about Skylar when questioned. From what she has learned about Amanda through her class, Sattler expressed no concerns about allowing Amanda to continue parenting Skylar. Sattler added Amanda is passing all of her classes, except for math.
 {¶ 19} Via Judgment Entries filed February 22, 2007, the trial court ordered Amanda and Brandon to be returned to the custody of Father under the protective supervision of the Department, and Skylar remain in the temporary custody of Dixie Dyer under the protective supervision of the Department. The trial court further ordered visitation between Mother, Amanda, and Brandon, as well as visitation between Skylar, Amanda, and Broc to be as is acceptable to the Department. The trial court issued Findings of Fact and Conclusions of Law based upon the testimony presented at the adjudicatory hearing.
 {¶ 20} It is from these judgment entries Mother and Father appeal. *Page 12 
 {¶ 21} Mother raises the following assignment of error:
 {¶ 22} "I. THE TRIAL COURT ERRED IN FINDING AMANDA AND BRANDON PATTERSON NEGLECTED AND DEPENDENT CHILDREN PURSUANT TO OHIO REVISED CODE SECTION 2151.03 AND 2151.04 AND SKYLAR BOWE A DEPENDENT CHILD PURSUANT TO OHIO REVISED CODE SECTION 2151.04 AS SUCH DECISION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} Father raises the following assignment of error:
 {¶ 24} "I. THE TRIAL COURT ERRED IN FINDING AMANDA PATTERSON, BRANDON PATTERSON AND SKYLAR BOWE NEGLECTED AND DEPENDENT CHILDREN PURSUANT TO OHIO REVISED CODE SECTION 2151.03 AND 2151.04 AS SUCH DECISION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Mother's Appeal I / Father's Appeal I {¶ 25} Because Mother's and Father's assignments of error raise the same issues, we shall address said assignments of error together. Mother and Father both challenge the trial court's finding Amanda and Brandon to be neglected and dependent children, and Skylar Bowe to be a dependent child.
 {¶ 26} In order for the trial court to adjudicate a child neglected and dependent, the court must find the state established the elements of such, as defined by R.C. 2151.03 and 2151.04, by clear and convincing evidence.
 {¶ 27} R.C. 2151.03 defines "neglected child" as "any child:
 {¶ 28} "* * * *Page 13 
 {¶ 29} "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 {¶ 30} "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being".
 {¶ 31} R.C. 2151.04 defines "dependent child" as "any child:
 {¶ 32} * * *
 {¶ 33} "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
 {¶ 34} "The decision of a trier of fact relating to the adjudication of the children as neglected or dependent will not be overturned as against the manifest weight of the evidence, as long as the record contains competent credible evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for neglect or dependency have been established." (Citations omitted.)In re S. (1995), 102 Ohio App.3d 338, 344-5. Pursuant to the Ohio Supreme Court, "clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v.Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 35} With respect to the finding of neglect, the evidence presented at the adjudicatory hearing revealed Father took a passive role in the family, contributing to the *Page 14 
lack of adequate parental control. Although Father acknowledged he knew Mother had a substance abuse problem in the past, he lived in denial as to the current existence of such a problem. Father took an attitude of "I won't do anything because it won't help". As a result of his inability to admit to Mother's problem, he has abandoned his responsibility to protect and parent Amanda and Brandon. Insufficient parental supervision, alone, will support a finding of neglect. In Re:Zeiser (1999), 133 Ohio App.3d 338, 347-350. When determining whether a lack of supervision rises to the level of neglect, the trial court must consider the ages of the children, the pattern, regularity, and length of incidence of no supervision and whether it appears the lack of supervision will continue due to the inability or willingness of the parents to acknowledge the problem. Id. at 347.
 {¶ 36} Mother maintains all of the evidence relative to her illegal drug use was hearsay and/or speculative. During the pendency of the case, Mother did not have any positive drug screenings, and the Tuscarawas County Sheriff's Department's search of the home on September 15, 2006, uncovered no illegal drugs or paraphernalia. Evidence of Mother's drug use came from the testimony of Brandi Fox, a guidance counselor at Amanda's prior high school. Amanda told Fox Mother smoked crack cocaine and Amanda knew how to manufacture the drug. In contrast, Amanda denied making such statements to Fox and she did not know whether her Mother was using illegal drugs, but rather she was merely speculating.
 {¶ 37} Mother and Father's assertion the children were well supervised and well cared for is belied by the fact they were unable to ensure Amanda's regular attendance at school and Amanda's becoming pregnant and giving birth twice between the ages of *Page 15 
fourteen and sixteen. Amanda left Mother and Father's home because she felt it was not a proper environment for her or her infant son. Left at this inappropriate home was her eight year old brother, Brandon. The law does not require the Court to experiment with a child's welfare to see if he will suffer great detriment or harm. In Re: Bishop (1987),36 Ohio App.3d 123, 126 (Citation omitted).
 {¶ 38} The trial court was in the best position to weigh the evidence and assess the credibility of the witnesses. Based upon the foregoing and the entire record in this matter, we do not find the trial court's findings Amanda and Brandon to be neglected and dependent and Skylar to be dependent were against the manifest weight of the evidence. Mother and Father's assignments of error are overruled.
 {¶ 39} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed.
 By: Hoffman, P.J. Edwards, J. and Delaney, J. concur *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed. Costs assessed to Appellants. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed. Costs assessed to Appellants. *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed. Costs assessed to Appellants. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed. Costs assessed to Appellants. *Page 1